IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| HEON JONG YOO a/k/a HANK YOO | § | |
| | § | CIVIL ACTION NO. 6:20cv401 |
| VS. | | CONSOLIDATED WITH |
| | § | CIVIL ACITON 6:22cv079 |
| US MARSHAL SERVICE, et al. | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Heon Jong Yoo, a former federal inmate confined within the Gregg County Jail, Texas, jail proceeding *pro se*, filed these civil-rights proceedings under both 42 U.S.C. § 1983 and *Bivens*. The cases were referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the proceedings. For the reasons explained below, the Court recommends that Defendants' motions to dismiss, (Dkt. ## 40, 47), be granted and that Plaintiff Yoo's lawsuit be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted.

**I. Plaintiff Yoo's Amended Complaint**

Yoo's amended complaint, (Dkt. #25), is the operative pleading in this case. An amended complaint entirely supersedes and take the place of an original complaint. *See Clark v. Tarrant Cnty.*, Tex., 798 F.2d 736, 740 (5th Cir. 1986). Yoo sues (1) the United States Marshal Service, (2) Maxey Cerliano, Gregg County Sheriff, (3) Jeff Callaway, Chief Deputy, (4) John M. Garrison, United States Marshal, and (5) the United States. In case number 6:22cv79, Yoo sues two unidentified United States Marshal Deputies. *See* 6:22cv79, Dkt. ## 1, 5.

Yoo initial filed this lawsuit in July 2020, (Dkt. #1). He then filed two amended complaints, (Dkt. ##7, 9), before filing a motion to stay his case. The undersigned granted Yoo's motion to

stay the case, (Dkt. #16), until he was ready to proceed; Yoo then filed a motion to reopen his lawsuit in January 2022, which was granted. He filed the operative amended complaint, and the Court issued an order regarding Plaintiff's obligation to effect service because he is not proceeding *in forma pauperis*, (Dkt. #29). The order—issued on April 1, 2022—explained the time limits under Federal Rule of Civil Procedure 4(m), and extended the service deadline for 90 days. Accordingly, Yoo's deadline for effecting service was extended to June 31, 2022. The docket reflects that he attempted to effect service on Defendants on May 12, 2022, (Dkt. ##38, 39), and again in December 2022 and January 2023, (Dkt. #50).

Collectively, Yoo maintains that the Gregg County Jail violated his constitutional rights by failing to adhere to the Federal Performance Based Detention Standards (FPBDS). He contends that his incarceration in the Jail resulted in a deterioration of his health, undue burdens, and harm in his litigation abilities. Specifically, Yoo states the following:

> I was arrested on 2018406 and had been in the Gregg County Jail from (to the best of my recollection) 20180426 to 20190516. Gregg County Jail is significantly below the minimum standards[] that a facility must meet to contract with the USMS to have federal detainees. The Federal Performance Based Detention Standards (FPBDS), in almost all aspects, including but not limited to lack of law library access. Especially since I was representing myself throughout trial, and until 2019 September, being confined to Gregg County Jail resulted in significant deterioration of my health, undue burden and irreparable harm in my litigation abilities and due process.

Dkt. #25, pg. 4 (operative amended complaint).

In his amended complaint, Yoo attaches a litany of grievances. *Id*. at pg. 68-92. He contends that his rights to access the courts during his criminal trial were violated because the Jail facility did not have a law library inside. He explains that a lawyer provided him with a criminal procedure book and that he was able to spend a week "of intense studying," with it. *Id*. at pg. 78. At the same time, notably, he argues that the Jail's phone was "the only method of legal research." *Id*. at pg. 81. Yoo further complains of a delay in mail, and that detainees could not check their

own dockets. Within 6:22cv79, he argues that the two USMS deputies violated his constitutional rights by transferring him to the Gregg County Jail—as well as housing him there.

Yoo alleges several "legal process violations" while incarcerated: (1) overpriced phone calls, (2) difficulties gaining phone access, (3) delay in communication with the court and prosecution, (4) limited phone time, (5) limited access to the dockets, (6) no email or internet access, (7) difficulty in obtaining discovery, (8) no ability to file cases/appeals, (9) no ability to reach the district court directly, and (10) lack of clocks and calendars. From what the Court can discern, the crux of Yoo's contention revolve around the lack of a law library in the Jail.

He also contends that he was "tortured" because the Jail posed health risks and poor conditions, including (1) poor sanitary conditions, (2) air conditioning during sleep, (3) lack of sufficient recreation, (4) small cell size, (5) uncomfortable mattresses, (6) deficient food, (7) denial of an X-ray for his back and knee, (8) difficulty acquiring toilet paper, a haircut, and nail clippers. Yoo seeks $2,500,000.00 from Defendants Garrison and the USMS—and $250,000.00 from Defendants Maxey Cerliano and Jeffrey Callaway.

## II. Defendants' Motions to Dismiss and Yoo's Responses

Defendants filed respective motions to dismiss, (Dkt. ##40, 47). Defendants Cerliano and Callaway maintain, (Dkt. #40), that Yoo performed insufficient process and service of process. Specifically, they assert that on May 9, 2022, the Gregg County Sheriff's Office received an EMS envelope from Yoo, mailed from Seoul, Korea, containing a summons with this cause number. The summons, however, was not signed by the Clerk of Court, did not contain a copy of the complaint, and was addressed to the USMS. Defendants Callaway and Cerliano attest that they never received a summons or a copy of a complaint—rendering service of summons improper.

Additionally, Defendants Callaway and Cerliano argue that Yoo attempted to perfect service through Texas law, which provides that no person that is a party or who is interested in the outcome of the suit may serve process. Yoo, however, himself mailed the insufficient summons to the Gregg County Sheriff's Office. Defendants urge this Court to dismiss Yoo's complaint under both Rule 12(b)(4) and 12(b)(5).

Finally, Defendants argue that—in addition to insufficient service of process—Yoo failed to state a claim upon which relief may granted. Specifically, they maintain that Yoo raised no viable claim for the denial of access to courts; Yoo failed to identify how he was actually injured in his underlying legal proceeding. They also urge this Court to examine Yoo's criminal case— 6:18cr016—wherein Yoo was representing himself and filed voluminous pleadings, including an appeal to the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court. Accordingly, Defendants Callaway and Cerliano assert that Yoo had "adequate, effective, and meaningful access to the courts" while incarcerated, (Dkt. #40, pg. 7).

Turning to Defendant Garrison's motion to dismiss, Defendant Garrison also asserts that Yoo never served him under Rule 4, and that his efforts at service fare no better. He argues that Yoo failed to timely effect service and that his attempts were insufficient. Defendant Garrison further states that Yoo failed to show good cause for his failure to serve properly, as his lawsuit was filed years ago—and the Court warned him that the failure to perfect service within the 90-day period may result in the dismissal of his lawsuit.

Defendant Garrison also maintains that this Court should not create a judicially-implied *Bivens* remedy, as Yoo presented *Bivens* claims that the district courts repeatedly reject. He argues that Yoo raised claims that present a new *Bivens* context, which the Supreme Court cautions against. Finally, Defendant Garrison insists that Yoo failed to state a claim upon which relief may

be granted because Yoo provides only conclusory allegations regarding his contracting responsibilities, (Dkt. #47, pg. 19).

Yoo filed responses to the motions to dismiss, (Dkt. ##42, 51). In his first response, Yoo explains that he had a surgical operation on May 17, 2022. He also insists that he is not a lawyer and that his failure to follow proper procedures were not due to a lack of due diligence—as he found a complaint form for himself and made an attempt at service.

He also states that he is not "complaining [about] the quality of his defense," but rather "the court, prosecution, and USMS actively interfering with [his] constitutional right to self-representation and adequate legal defense," (Dkt. #42, pg. 2). While he argues that he waived his right to be represented by counsel, he "never waived his right to access legal materials." *Id*. He also states that his ability "to prepare and litigate voluminous pretrial motions [] and make many objections only speaks to [his] intellect and competence." *Id*. Yoo further insists that because of his incarceration at the Gregg County Jail, he was unable "to contact the individuals and organizations that [he] needed to contact to call in as witnesses in [his] favor and authenticate evidences, etc." *Id*. He argues that had he been able to access legal materials, call witnesses, and produce convincing PowerPoints, he "would have been far more persuasive to the jury." *Id*. Finally, Yoo states that he is "not complaining about the fact that [he] had lack of access to the courts," but that he was a *pro se* defendant who "should have had the same access and privileges as an attorney." *Id*.

In response to Defendant Garrison's motion, Yoo argues that this is the first time he filed a lawsuit without proceeding *in forma pauperis*—and that he was "too inexperienced to properly recognize how service [of] process works in a civil suit against a United States employee," (Dkt. #51, pg. 1). He insists that it is "against the interests of justice" to hold him to a professional

attorney standard. As for the *Bivens* argument, Yoo states that the case law does not completely prohibit the extension of *Bivens*, but "just disfavors it." *Id*. at pg. 3. He then requests this Court to issue a stay "pending other procedures." *Id*. at pg. 3.

### III. Legal Standards

The Court understands that Yoo raised claims concerning the alleged denial of access to courts through lack of legal materials for his defense and his conditions of confinement while incarcerated at the Gregg County Jail. The Court will address first whether Yoo has properly served Defendants before turning to whether Yoo's has failed to state claims upon which relief may be granted.

1. Service of Process Generally

The rules for serving process are intended to give defendants sufficient notice of an action filed against them. *See* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1061 (4th ed. 2019) ("[Federal Rule 4] was designed to provide maximum freedom and flexibility in the procedures for giving all defendants...no matter where they might be located, notice of the commencement of the action."); *see also Goetz v. Synthesys Techs., Inc.*, 415 F.3d 481, 484 (5th Cir. 2005) (the primary purpose of the service requirements is to give defendants actual notice of litigation against them).

The Fifth Circuit has repeatedly held that a litigant's *pro se* status does not excuse the failure to properly effect service. *See Systems Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990); *Thrasher v. City of Amarillo*, 709 F. App'x 509, 512 (5th Cir. 2013) ("A litigants pro se status neither excuses his failure to effect service nor excuses him for lack of knowledge of the Rules of Civil Procedure."). In *Signs*, the Fifth Circuit held that the district court did not abuse its discretion in finding that a *pro se* litigant failed to show good cause for the failure

to effect service—despite his multiple attempts to do so and given that defendants had actual notice of his lawsuit. 903 F.2d at 1013-14; *see also Thibeaux v. Tobias*, 61 F. App'x 918, 2003 WL 1193576, at *1 (5th Cir. 2003) ("Special consideration does not exist for *pro se* litigants who fail to comply with the service requirements of Rule 4.").

As Defendants highlight, the procedural requirements concerning service of summons **must** be satisfied before a court has personal jurisdiction over a defendant. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (emphasis suppled); *see also Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002) (holding that the district court lacked personal jurisdiction over a defendant who neither received service of process nor made a general appearance). When a defendant challenges service of process, the serving party bears the burden of proving that valid service has been accomplished or that good cause exists for the failure to effect service. *See Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013). Good cause requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Id.* (quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985)).

Service is governed by Federal Rule of Civil Procedure 4(e). When serving an individual within the United States, the rule states as follows: Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by

> (1) following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by law to receive service of process.

Fed. R. Civ. P. 4(e). Under Texas law, service of process may be accomplished by personal service upon a defendant or by mailing the service of documents to the defendant "by registered or certified mail, return receipt requested." *See* Tex. R. Civ. P. 106(a). Alternatively, if these two methods fail, Texas provides for substituted service upon a motion supported by an affidavit by leaving a copy of the service documents at a defendant's residence, place of business, or any other manner deemed to be reasonably effective to give the defendant notice. *See* Tex. R. Civ. P. 106(b)(1)-(2).

Rule 4(i) provides the requirements for service upon the United States, its agencies, corporations, officers, or employees. The rule contains two components, both of which are required. First, to serve a United States agency such as the USMS or an employee within the USMS, a plaintiff must serve the complaint and summons upon the United States Attorney for the district where the action is commenced. *See* Rule 4(i)(1)(A). A plaintiff may do this through delivering the documents on the United States Attorney, to a properly designated employee of the United States Attorney, or via registered or certified mail to the civil-process clerk at the United States Attorney's Office. Fed. R. Civ. P. 4(i)(1)(A)(i), (ii).

Second, a plaintiff must serve a copy of the summons and complaint to the Attorney General of the United States in Washington, D.C. by registered or certified mail. Fed. R. Civ. P. 4(i)(1)(B). If suing a United States employee in his individual capacity, the plaintiff must serve the United States and also the employee under Rule 4(e), (f), or (g). Fed. R. Civ. P. 4(i)(3). A plaintiff must comply with Rule 4—actual notice is not sufficient and, once again, *pro se* status is no excuse for noncompliance. *See McMasters v. United States*, 260 F.3d 814, 817 (7th Cir. 2001)

("[Nothing in the Federal Rules of Civil Procedure allows a judge to excuse service altogether. Actual notice to the defendant is insufficient; the plaintiff must comply with the directives of Rule 4."); *see also Reyes v. Potter*, 2006 WL 734345, at *2 (S.D. Tex. Mar. 21, 2006) (citing *McMasters*, 260 F.3d at 817).

A party may raise insufficient process/service of summons by moving to dismiss under Rules 12(b)(4) or 12(b)(5). Dismissal for the failure to timely serve is without prejudice and is reviewed on appeal for an abuse of discretion. *Thrasher*, 709 F.3d at 511. A plaintiff can meet the burden of establishing that the defendant was properly served by producing the process server's return of service, which is generally accepted as *prima facie* evidence that service was properly effected. *Nabulsi v. Nahyan*, No. H-06-2683, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009), *aff'd sub nom. Nabulsi v. Bin Zayed Al Nahyan*, 383 F. App'x 380 (5th Cir. 2010). "Unless some defect is shown on the face of the return, a motion to dismiss under Rule 12(b)(5) requires the defendant to produce admissible evidence establishing the lack of proper service."

## 2. Failure to State a Claim

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged.  *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully.  *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.  *See Whatley v. Coffin*, 496 F. App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement.  *Id*.

## IV. Discussion and Analysis

Defendants correctly assert that Yoo failed to timely effect service of process on certain Defendants. While he urges this Court to excuse his failures due to his *pro se* status, he has not shown good cause for his failure to timely effect service of process under the Rules.

### 1. Service of Process

While Yoo's latest attempt at service upon Defendants Callaway and Cerliano is sufficient, his service upon Defendants Garrison and the USMS is not. He has not shown good cause for the failure to effect timely service upon Defendants Garrison and USMS.

*a. Defendants Callaway and Cerliano*

The docket reflects that Yoo filed a notice, (Dkt. #36), explaining that he "went to the post office and mailed the summons" on May 3, 2022 to (1) the USMS in Tyler, and (2) the Gregg County Sheriff's Office. On May 12, 2022, Yoo himself issued summons to Defendants Callaway and Cerliano, (Dkt. #38). Neither the notice filed, nor the summons reflects that Yoo included a copy of the complaint or amended complaint. Similarly, the docket shows that Yoo himself issued summons to Defendants Garrison, USMS, and United States on May 12, 2022—but without any complaint, (Dkt. #39). Defendants Callaway and Cerliano filed their motion to dismiss, (Dkt. #40), on May 26, 2022.

The following day, May 27, 2022, and after filing a response to the motion to dismiss, Yoo filed another notice, (Dkt. #43), wherein he claims that he mailed a copy of the complaint along with the summons to both the Gregg County Jail and USMS. Yoo's attached envelopes indicate that he mailed his documents from South Korea and confirm that he sent it to the USMS in Tyler and the Gregg County Sheriff's Office in Longview, (Dkt. #43-1; #43-2).

Subsequently, on June 26, 2022, Yoo filed a notice evincing his attempt to serve both Defendants Callaway and Cerliano, (Dkt. #46). Sheridy Benoit, process server, submitted an affidavit—dated June 26, 2022—explaining that she served the complaint and summons on June 20-21, 2022, to the Gregg County Sheriff's Office by leaving the documents with Defendant Jeffrey Callaway, who "came into the lobby and kindly accepted," (Dkt. #46, pg. 1). Ms. Benoit also took a photograph of the lobby within Gregg County Sheriff's Office.

A review of the docket reflects that Yoo sufficiently effected service on June 20-21, 2022, upon Defendants Callaway and Cerliano. The court's order regarding service provided explained that Yoo must perfect service by June 31, 2022. Pursuant to Rule 4(e), Yoo delivered a copy of

the complaint and summons to Defendant Callaway through the process server—personally on Defendant Callaway.

However, the affidavit indicates that one copy of the complaint and summons was personally delivered to Defendant Callaway, which does not effect service upon Defendant Cerliano. *See, e.g.*, *Cherry v. Spence*, 249 F.R.D. 226, 229 (E.D. NC 2008) ("Each defendant is entitled to a summons or a copy thereof, Fed.R.Civ.P. 4(b)" and explaining that each defendant, whether there be one or many, must be served as provided by statute or rule); *Gatin v. Par. Pharm. Comp., Inc.*, 289 F. App'x 688, 693 (Fifth Cir. 2008) (explaining that each named defendant must be served with a summons and copy of the complaint.). While the affidavit includes a notation that Defendant Callaway is authorized by appointment or law to receive service upon the Gregg County Jail, Yoo does not establish that Callaway is an authorized agent. *See Clark v. Stat Care Clinics*, 2020 WL 1027145, at *3-4 (M.D. La. March 3, 2020) (explaining that under Rule 4(e) and 4(h), an agent must have actual authorization and "apparent authority" is insufficient). Accordingly, the record shows that Defendant Cerliano was not properly served.

The docket reflects that both Defendants Callaway and Cerliano received notice of Yoo's lawsuit, especially in light of their motion to dismiss. Moreover, while Defendants Callaway and Cerliano filed a reply to Yoo's response addressing Yoo's previous attempt to serve them, they failed to address this June 2022 service attempt. Because Defendants Callaway and Cerliano failed to address this June 2022 service attempt through the process server, the Court finds it sufficient to conclude that dismissal of Defendant Cerliano for Yoo's failure to effect service is not appropriate. *See Burditt v. U.S. Steel Corp.*, 2014 WL 713212, at *1 (S.D. Tex. Feb. 21, 2014) (explaining that the party challenging service must "be specific about the manner in which the

plaintiff has failed to satisfy the summons or service requirements."). The Court therefore determines that Yoo sufficiently served Defendants Callaway and Cerliano.

### b. Defendants Garrison and USMS

Yoo filed an additional notice, (Dkt. #45), regarding his attempt to serve Defendants Garrison and USMS. Sharon Bayless's affidavit, dated June 26, 2022, attests that she delivered a copy of the summons and complaint on the USMS in Smith County, Texas, and personally upon Defendants Garrison, USMS Deputy in Charge, (Dkt. #45, pg. 1). She also attached a photograph of the William M. Steger Federal Building and United States Courthouse.

However, as Defendant Garrison explains, Yoo failed to serve the United States Attorney's Office or the United States Attorney General under Rule 4(i)(1)(B). The affidavit does not show that Yoo attempted to serve the United States Attorney General as required. Accordingly, as the Rule 4(i) components provide that a plaintiff must serve the United States Attorney General, Yoo failed to properly serve Defendants Garrison and USMS on June 26, 2022. Because Yoo failed to serve Defendants Garrison and USMS through his June 2022 notice, (Dkt. #45), the Court has no personal jurisdiction over these Defendants—thereby requiring dismissal.

The docket reflects that Yoo filed a subsequent notice regarding service, (Dkt. #50), on January 14, 2023. He states that his response is delayed because he was "preoccupied with and hyper focused on building [his] programming portfolio," and that he believed he submitted the service documents correctly "when it was done," but "only realized now that [he] did not." Yoo attached an affidavit from Christopher Jensen, process server, indicating that Jensen served a copy of the summons, the complaint, and the amended complaint on the East Texas United States Attorney in Jefferson County, Texas and in Beaumont, Texas, on December 19 and 20, 2022, by

leaving the documents with the Clerk who is authorized by law or appointment to receive service of process for the United States Attorney for the Eastern District, (Dkt. #50, pg. 2).

A different process server, LaTisha Palmer, filed an "affidavit of nonservice" indicating that she was unable to serve the United States Attorney General in Washington, D.C. on December 8, 2022, because she "could not find the subject or information as to the location of subject's whereabouts," (Dkt. #50, pg. 4). In the description of "serve attempt #1" within the affidavit, Ms. Palmer notes that she "spoke to security personnel, who stated they were still not accepting legal documents in person, and that they would have to be mailed." *Id*.

Here, first, these December 2022 attempts to serve Defendants Garrison and USMS are untimely. As explained, the Court provided Yoo with a deadline to serve Defendants through June 31, 2022—and his attempts in December 2022 were months later. While he recognized that his previous attempt in June 2022 was insufficient, his focus on his portfolio in the interim is not good cause for his failure, as Yoo filed this lawsuit originally in 2020.

Furthermore, even if the Court found that Yoo's focus on his portfolio and not his lawsuit demonstrates good cause for the failure to timely effect service, which it does not, he again failed to properly serve the United States by failing to send a copy of the complaint and summons by registered or certified mail to the United States Attorney General in Washington, D.C. *See* Fed. R. Civ. P. 4(i)(1)(B). *See Campbell v. United States*, 2012 WL 830508, at *2 (E.D. Tex. Feb. 3, 2012) ("Plaintiff failed to effect proper service on the United States under Rule 4(i) because he did not serve the United States attorney or the United States attorney general, and he must serve both . . ."). Accordingly, then, Yoo's various attempts to serve Defendants Garrison and the USMS were insufficient—and the Court does not have personal jurisdiction over these Defendants.

2. Claims Arising under 42 U.S.C. § 1983

Even if Yoo properly served all Defendants, his lawsuit suffers from a fundamental flaw: He failed to state a claim upon which relief may be granted. The Court understands that Yoo maintains that Defendants Callaway and Cerliano, within the Gregg County Sheriff's Department, violated his rights to access the courts. He also complains about the conditions of confinement while in the jail as well as being transported to the jail.

a. *Access to Courts*

Inmates have the constitutional right to access legal materials, and prison officials may not deny inmates access to courts. *See Clewis v. Hirsch*, 700 F. App'x 347, 348 (5th Cir. 2017) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). As Defendants explain, however, there is no freestanding right to a law library or legal assistance. *Bounds*, 430 U.S. at 830; *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.").

Relevant here, an inmate who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access a law library. *See Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996); *United States v. Whittington*, 269 F. App'x 388, 406 (5th Cir. 2008) ("During the period when he did represent himself, both before trial and after, having fired his court-appointed attorney, he had no right to law library access."); *Danmola v. United States*, 736 F. App'x 514, 515 (5th Cir. 2018) (Mem) ("Because he had refused the offer of court-appointed representation, he had no constitutional right of access to a law library in order to prepare for his pro se defense at trial.").

The Supreme Court has stated that this right to access courts encompasses no more than the ability of an inmate to prepare and transmit a *necessary* legal document to the court. *Id*. (citing *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (internal quotations and footnote omitted)); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (explaining that the right "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.").

Furthermore, prisoners must demonstrate an actual injury to demonstrate a violation of this right. *Lewis*, 518 U.S. at 351; *see also Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (explaining that the Supreme Court, in *Lewis*, "held that an inmate alleging denial of access to courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct."). Similarly, a plaintiff claiming a denial of access to courts through mail tampering must show that his legal position has been prejudiced by the alleged mail tampering. *See Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993).

When examining whether a plaintiff has experienced "actual injury," the Supreme Court has provided examples of circumstances that might show a denial of access to court:

> [The prisoner] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis*, 518 U.S. at 351; *see also McIntosh v. Thompson*, 463 F. App'x 259, 260-61 (5th Cir. 2012) (unpublished) ("Even if McIntosh's constitutional rights had been restricted, he failed to allege sufficiently that he suffered an injury in fact, which is required to state a claim for denial of meaningful access to courts.").

Importantly, the question is whether the plaintiff's "position as a litigant was prejudiced" as a direct result of the alleged denial. *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (reasoning that "if Eason was pursuing a legal action which necessitated his use of the law library and access to the library was denied, this deprivation could represent a violation of his constitutional rights."); *Torres v. Bullock*, 2021 WL 2451326, at *4 (S.D. Tex. Apr. 6, 2021) ("In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because of the alleged denial.").

Here, Yoo fired several attorneys representing him during his criminal proceedings—including court-appointed counsel—and insisted on proceeding *pro se*. The transcripts of his pretrial hearing before United States Magistrate Judge K. Nicole Mitchell and his trial transcripts in his criminal case demonstrate that his decision to represent himself was both voluntary and knowing, despite all warnings that proceeding *pro se* was not advisable. *See* 6:18cr016 (criminal proceedings).

Accordingly, because Yoo rejected the offer of court-appointed counsel and waived his right to counsel, Yoo had no constitutional right to access a law library—or even other legal resources—during his criminal proceedings for the purpose of preparing his *pro se* defense. *See White v. Longino*, 428 F. App'x 491, 491 (5th Cir. 2011) ("A prisoner, who knowingly and voluntarily waives appointed representation by counsel, may not file a 42 U.S.C. § 1983 action asserting he was denied the constitutional right to access a law library in preparing a pro se defense in a criminal trial."); *see also Smith v. Hutchins*, 426 F. App'x 785, 789 (11th Cir. 2011) ("Because Smith voluntarily and intelligently waived his right to counsel, Smith had no constitutional right to access a law library and other legal resources during his pre-trial detention."); *United States v.*

*Wilson*, 690 F.2d 1267, 1272 (9th Cir. 1982) ("The offer of court-appointed counsel to represent Wilson satisfied the Fifth Amendment obligation to provide meaningful access to the courts. Wilson rejected that offer of representation and insisted throughout that he be permitted to personally conduct his own research, even though the local county facility in which he was being held had no library."). Yoo's current claim—and insistence throughout his criminal proceedings— that he had a constitutional right to a law library is wholly without merit. Contrary to his claims, he was not "entitled" to a law library.

Furthermore, even if he had such a constitutional right, Yoo failed to plead that he was actually prejudiced by the lack of a law library, legal materials, or access to the courts. He does not identify a nonfrivolous claim that he was prevented from presenting; rather, he insists that if he had "case law," he "would have been far more persuasive to the jury." Similarly, he argues that—but for the Gregg County Jail's restrictions—he could have subpoenaed or called relevant witnesses for his defense. But he does not identify the witnesses or how any unidentified witnesses would have helped his defense. Such conclusions and speculative claims do not suffice. Yoo has not alleged facts indicating that his position as a litigant was actually prejudiced. *See Rosario v. Strawn*, 2022 WL 3151963, at *3 (3rd. Cir. Aug. 8, 2022) ("To the extent that this was an access-to-courts claim regarding his purported inability to access the law library in support of his criminal proceedings, he failed to identify a nonfrivolous or arguable legal claim he lost, or how more access to the law library would have changed the outcome of his criminal proceedings.").

The Court further notes that District Judge Schroeder, presiding over Yoo's criminal case, encouraged the USMS and/or Gregg County officials to allow an exception to the telephone restrictions, for at least one weekend prior to trial, so that Yoo could communicate with his stand-by counsel. The record confirms that the County provided an exception to Jail's telephone

restrictions so that Yoo could communicate and prepare his defense. *See* 6:18cr016 (pretrial hearing). Such exception rebuts his remarks that the Court, the prosecution, and defense counsel purposely refused to him access to courts/legal materials.

Furthermore, while Yoo repeatedly insists that he was without legal materials for his defense, he highlights that he was given a Federal Criminal Code and Rule Book—and that "after about a week of intense studying," he discovered essential codes, 6:18cv655, docket no. 1. Likewise, as Judge Schroeder highlighted during Yoo's criminal trial, Yoo filed over 200 motions, pleadings, notices, letters, and various requests. Even before sentencing, he filed several appeals to the United States Court of Appeals for the Fifth Circuit. *See* 6:18cr016.

As Defendants assert, Yoo's ability to file voluminous pleadings throughout his criminal proceedings—coupled with his rejection of court-appointed counsel—contradict any notion that he was denied meaningful access to courts. Yoo's claim that he was denied his constitutional right to access to courts and legal materials fails to state a claim upon which relief may be granted and should be dismissed. *See United States v. Walker*, 129 F.3d 1266, 1997 WL 720385, at *4 (6th Cir. 1997) ("Having elected to proceed for a time without such representation, he cannot complain that he was entitled to access a law library or other assistance in preparing his own case.").

### b. Conditions of Confinement

Yoo insists that the Gregg County Jail is "significantly" below the minimum federal standards that a jail facility must meet to contract with the USMS in order to house federal inmates. He argues that, in almost all aspects, the Jail does not meet the Federal Performance Based Detention Standards (FPBDS). Yoo states that several "legal policy violations" occurred, as outlined above, and that he was tortured inside the jail because of poor conditions. He also complains that he was transported to the jail despite the COVID-19 outbreak.

As an initial matter, the Court notes that Yoo failed to plead personal involvement with respect to any individual named Defendant in both cases. Personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (explaining that there must be an affirmative link between injury and the conduct of defendants). The Fifth Circuit has specifically held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992).

Here, throughout his amended complaint, attachment, and his complaint filed in 6:22cv79, Yoo fails to plead an affirmative link between any injury resulting from the conditions at the jail he describes and the conduct of the individual defendants. Rather, he pleads generalized allegations—which do not suffice. *See Benfield v. Magee*, 945 F.3d 333, 338 (5th Cir. 2019) ("Warren's allegations, as is, are little more than 'naked assertions devoid of further factual enhancement.'") (internal citation omitted).

To the extent that Yoo pleads supervisory liability on behalf of the Defendants, the Court notes that such argument fails. The Supreme Court has held that the term supervisory liability in the context of a section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id.*

A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298,

20

303-304 (5th Cir. 1987). Here, as mentioned, Yoo has not alleged any facts showing that Defendants were personally involved in the incidents or grievances he describes. *Silva v. Moses*, 542 F. App'x 308, 310-11 (5th Cir. 2013); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed.").

Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted). In order to establish a claim for governmental liability under section 1983, a plaintiff must allege and identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 694-95.

Here, Yoo fails to identify facts that satisfy this standard. Instead, while Yoo does not mention supervisor liability, he infers that because Defendants—such as Defendants Cerliano and Garrison—held supervisory roles, then *ipso facto* they must be liable. Moreover, Yoo failed to identify a deficient policy or custom that was "the moving force of the constitutional violation." Accordingly, Yoo's implicit attempt to establish Defendants' liability through vicarious liability is unavailing. *See Birdwell v. Livingston*, 327 F. App'x 457, 459-60 (5th Cir. 2009) (holding that there is no liability in the absence of personal knowledge on the part of officials).

Nonetheless, the constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc); *see also Estate of Henson v. Krajca*, 440 F. App'x 341,

343 (5th Cir. 2011) ("The Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care."). As the United States Supreme Court outlined:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). In the jurisdiction of the Fifth Circuit, "the legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an episodic act or omission of an individual state official." *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015).

A challenge to a condition of confinement is a challenge to "general conditions, practices, rules, or restrictions of pretrial confinement" such as the number of bunks per cell, mail privileges, and disciplinary segregation. *Id.* at 463 (citing *Hare*, 74 F.3d at 64-45). His litany of grievances regarding the jail—lack of law library, overpriced phone calls, lack of internet, unsanitary conditions, and lack of air conditioning, among others—are challenges to general conditions and practices rather than faulting a specific jail official, especially because he does not identify particular Defendants when outlining his grievances, (Dkt. #25).

A Jail's mere failure to follow federal standards is not a constitutional violation. *See Lewis v. Sec. of Pub. Safety & Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) (explaining that internal rules and regulations do not alone create federally-protected rights). The FPBDS can be defined as a "guide" or a "handbook," and is described as "for use in reviewing non-federal facilities that house federal prisoners to ensure these facilities are safe, humane, and protect prisoners statutory

and constitutional rights" on the USMS website. Yoo points to nothing indicating that this aid for non-federal facilities has been recognized by the United States Supreme Court nor enshrined into law. This allegation is both without merit and fails to state a claim upon which relief may be granted.

Yoo's other claims fare no better—as he does not describe a single instance wherein he was deprived of life's minimal necessities while housed within the Gregg County Jail. Moreover, despite his amended complaint, he failed to plead facts indicating that conditions of the jail are purely punitive rather than reasonably related to a legitimate government objective. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011). It is well-settled that inmates are not entitled to a rose garden while incarcerated, as there is nothing in the Constitution "which requires that they be housed in a manner most pleasing to them." *See Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981) (Eighth Amendment context); *see also Cupit v. Jones*, 835 F.2d 82, 84 (5th Cir. 1987) (explaining that pretrial detainees have no constitutional right to a stress-free atmosphere in county jail).

He, instead, lists a variety of alleged violations of the FPBDS that are both general and conclusory in nature. For example, Yoo alleges that "medical screenings are done by regular guards," and "reason for placing a detainee in restrictive housing is completely discretionary and often not supported" without any factual elaboration as to how such conditions violated his constitutional rights. Similarly, while he complains of pests, food lacking nutritional value, and cold temperatures inside the jail, he alleges no resulting harm—and does not connect the conditions to a constitutional violation, (Dkt. #25).

While Yoo states that the uncomfortable mattresses and pillows harmed his wrist, such an assertion does not plead facts showing that he was deprived of one of life's minimal necessities. He simply states that the "borderline painful mattress and pillow" constitute a violation of the

FPBDS. Because Yoo has not pled (1) personal involvement of the individual defendants, (2) a deprivation of life's minimal necessities, and (3) how any jail condition was purely punitive rather than reasonably related to a legitimate government objective, his claims fail and should be dismissed. He has not identified a single condition or resulting harm implicating constitutional standards. *See Estate of Bonilla v. Orange Cnty.*, 982 F.2d 298, 309 (5th Cir. 2020) ("[A] detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process Rights.").

### 3. Claims Arising Under *Bivens*

As Defendant Garrison highlights, Yoo also styles his claims concerning jail conditions under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 288 (1971). He maintains that the Supreme Court disfavors the "judicial activity" of extending *Bivens* to new contexts; this argument is well-taken and persuasive. This Court declines Yoo's invitation to extend *Bivens* to new contexts.

While the Supreme Court has explicitly stated that it was not overruling *Bivens*, it proceeded to explain that "[o]ver the past 42 years, [it had] declined 11 times to imply a similar cause of action for other alleged constitutional violations." *Egbert v. Boule*, 142 S. Ct. 73, 1809 (2022) (collecting cases). Indeed, the Court has only recognized a private cause of action for damages for constitutional violations committed by federal agents in three contexts: (1) under the Fourth Amendment for violations against the prohibition of unreasonable searches and seizures inside the home, *Bivens*, 403 U.S. at 397, (2) under the Fifth Amendment Due Process Clause regarding gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and (3) under

the Eighth Amendment for the failure to provide medical treatment to an asthmatic prisoner, *Carlson v. Green*, 446 U.S. 14, 19 (1980).

In 2017, the Court specifically highlighted that it had refused to extend *Bivens* to any new context. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855, 1857 (2017), The Court explained that these three cases—*Bivens*, *Davis*, and *Carlson*—"represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. Expanding *Bivens* to any new context is "disfavored judicial activity." *Id*. at 1857. The Fifth Circuit recently described *Bivens* as a "regime [that] ended long ago." *See Oliver v. Nivar*, 973 F.3d 438, 472 (5th Cir. 2020).

Here, Yoo's claims regarding jail conditions invite this Court to extend *Bivens* to new contexts or categories. District Courts throughout the country have rejected *Bivens* claims related to conditions of confinement and claims regarding access to courts. *See, e.g.*, *Mammana v. Barben*, 856 F. App'x 411, 413-14 (3rd Cir. 2021) (holding that a claim that an inmate was subjected to unconstitutional conditions of confinement presents a new *Bivens* context); *Schwarz v. Meinberg*, 761 F. App'x 732, 733-34 (9th Cir. 2019) ("We decline to extend *Bivens* to Schwarz's claims— unsanitary cell conditions, access to courts, and request for placement in a camp facility—because these claims do not fall within the claims authorized by the Supreme Court."); *Walters v. LaSalle Corr. V, LLC*, 2022 WL 4391515 (W.D. Tex. Sept. 22, 2022) (declining to extend *Bivens* to claim regarding private prison contracting with the USMS to house pretrial detainees through deliberate indifference to a medical need); *Marinaccio v. United States*, 2022 WL 2833960 (D.NJ. July 20, 2022) (granting motion to dismiss *Bivens* claim that district clerk violated a plaintiff's First Amendment right to access the courts). Yoo's claims regarding access to courts and conditions of

confinement do not fall into any of the three categories articulated in *Bivens*, *Davis*, or *Carlson*; therefore, he presents claims that would constitute a new *Bivens* context.

Special factors counsel hesitation in creating new *Bivens* contexts here. As the Fifth Circuit explained, the Federal Tort Claims Act and the Administrative Remedy Program of the Bureau of Prisons are special factors counseling hesitation. *See Watkins v. Martinez*, 2022 WL 278376, at *1 (5th Cir. 2022). Moreover, the Prison Litigation Reform Act counsels hesitation as Congress— when it had the opportunity to do so—failed to provide for a damages remedy against federal employees who expose inmates to unconstitutional conditions of confinement. *See Watkins v. Three Admin. Remedy Coordinators of BOP*, 998 F.3d 682, 685 (5th Cir. 2021). Given that more than one special factor exists here that counsels hesitation, the Court must refrain from extending *Bivens*. *Ziglar*, 137 S. Ct. at 1857 ("[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'") (internal citation omitted). Accordingly, this Court likewise denies Yoo's invitation to extend *Bivens* to his claims.

In his reply, (Dkt. #51), Yoo argues that "*Bivens* would be used if there are no appropriate alternative method available." As explained, however, special factors exist here—including the Federal Tort Claims Act and even internal agency investigations. *See* 28 C.F.R. § 0.111(n) (providing that the Director of the USMS "shall direct and supervise all activities of the U.S. Marshals Service," which includes investigating USMS personnel). This argument is without merit.

Yoo requests that this Court "stay" his case so that he may pursue "other procedures," at which point he would then "reopen this case when the situation becomes that there are no adequate remedies available and becomes most unusual circumstances [sic]," (Dkt. #51, pg. 3). The Court should decline this request as well. Yoo filed this case in 2020. More importantly, however, as

explained above, Yoo wholly fails to state any claim upon which relief may be granted. He has not shown good cause for a stay of this case.

## V. Conclusion

Yoo's amended complaint and complaint in 6:22cv79—as well as his responses to Defendants' motions to dismiss—fail to state a claim upon which relief may be granted. Because he refused court-appointed counsel during his criminal trial, he now cannot complain that he was denied access to courts. The record of his criminal case, nevertheless, shows that Yoo filed hundreds of motions—thereby refuting any claim that he was unable to access the courts or legal materials.

Similarly, his claims regarding his conditions of confinement at the Gregg County Jail also fail. He has not alleged any personal involvement on behalf of any Defendant in any constitutional violation. Furthermore, he has neither pleaded facts indicating that a single condition at the jail was punitive rather than reasonably related to a legitimate penological goal nor that he was harmed by a constitutional violation. The Court, finally, declines his invitation to extend *Bivens* to his meritless claims.

<u>RECOMMENDATION</u>

Accordingly, it is recommended that Defendants' motions to dismiss, (Dkt. #40, 47), be granted and that Plaintiff Yoo's complaints be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy

shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.   *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 3rd day of March, 2023.

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE